DAVID J. LUJAN
LUJAN & WOLFF LLP
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone: (671) 477-8064/5
Fascimile: (671) 477-5297 (LAWS)

*Attorney for Plaintiff,*
*Mark Mafnas Apuron*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF GUAM

| MARK MAFNAS APURON, | CIVIL ACTION NO: |
|---|---|
| Plaintiff, | |
| v. | VERIFIED COMPLAINT FOR DAMAGES FOR |
| ROMAN CATHOLIC ARCHBISHOP OF AGANA, a Corporation sole; ANTHONY SABLAN APURON, an individual; DOE ENTITIES 1-5; and DOE-INDIVIDUALS 6-50, inclusive | 1. **Child Sexual Abuse**<br>2. **Negligence**<br>3. **Negligent Supervision**<br>4. **Negligent Hiring and Retention**<br>5. **Breach of Fiduciary Duty / Confidential Relationship** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Mark Mafnas Apuron ("Mark") files this Complaint for damages based on prior sexual abuse (the "Complaint") against Defendants Archbishop of Agana, a corporation sole, Anthony Sablan Apuron, an individual, and DOES 1-50 ("Defendants").

**I.**
**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because all parties are citizens of diverse states and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

2. This Court has personal jurisdiction over this matter because Defendants purposefully availed themselves to the benefit of the laws of this judicial district by regularly transacting and/or conducting business in this state.

3. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and or a substantial part of property that is the subject of the action is situated.

## II.
## PARTIES

4. At all times relevant hereto, Mark has been and is an individual residing in Dededo, Guam. Mark is currently 43-years old.

5. At all times relevant hereto, and upon information and belief, Roman Catholic Archbishop of Agana, a corporation sole, in accordance with the discipline and government of the Roman Catholic Church, is the legal name for Defendant Archbishop of Agana, also known as Archdiocese of Agana. ("Agana Archdiocese"), which is and has been at all times relevant hereto a non-profit corporation organized and existing under the laws of Guam, authorized to conduct business and conducting business in Guam, with its principal place of business in Guam. The Agana Archdiocese is an entity under the control of the Holy See, based in Vatican City, Rome, Italy, and as such constitutes a citizen of a foreign country for purposes of diversity jurisdiction. Agana Archdiocese is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

6. At all times relevant hereto, Defendant Anthony Sablan Apuron ("Apuron"), an individual and an agent of the Agana Archdiocese, was and is a member of the clergy of the Agana Archdiocese and has served both as a priest and as the Archbishop of Agana. At all times relevant hereto, Defendant Apuron was the appointed Archbishop of Agana and a resident of Guam and is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein. On information and belief, Plaintiff alleges that Defendant Apuron currently resides in the mainland United States other than plaintiff's state of residence.

7. Defendant-entities named herein as DOES 1 - 5, inclusive, are or at all times relevant hereto, were insurance companies that provided general liability coverage and / or excess level liability coverage pursuant to policies issued to the Agana Archdiocese and / or Roman Catholic Church of Guam. Defendant-individuals named here-in as DOES 6-50, inclusive, are at all times relevant hereto, were agents, employees, representatives and / or affiliated entities of the Agana Archdiocese and /or Roman Catholic Church outside

2

of Guam whose true names and capacities are unknown to Mark who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained. DOES 6 -50 assisted, aided and abetted and / or conspired with Apuron and / or other members of the Agana Archdiocese to conceal, disguise, cover up, and / or promote the wrongful acts complained of herein. As such, each such Doe is legally responsible in some manner for the events, happenings, and / or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

8. Each defendant is the agent, servant and/or employee of other defendants, and each defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.

### III.
### INTRODUCTORY ALLEGATIONS

**A. Culture of Sexually Predatory Behavior**

9. Since the inception of the priesthood many centuries ago, becoming a Catholic priest has required numerous vows to be taken among them a vow of celibacy, obedience to the laws of both God and society, and a variety of responsibilities that elevated priests, nuns, and entities that utilized the services of priests and nuns, to a high status in the community, which has induced parents to entrust their children to the care of priests and likewise induced children to submit to the commands and will of priests.

10. The creation of the ritual of altar boy service as a component of the Catholic mass and other religious services with the Catholic Church, if not originally conceived as such, ultimately became a tool by which sexually predatory priest would gain access to young boys and such access was disguised in the form of privileged opportunities by which the church invited certain young boys to serve as altar boys, an opportunity that was viewed as a respectable and distinguished role for a young boy in the community and gave the boy status of wearing liturgical apparel during church services and working side by side with the priests.

11. Further disguising the scheme to have sexual access to young boys was the ritual of requiring altar boys to spend the night at the church rectory, ostensibly to facilitate preparation for the following morning church services. By presenting the overnight requests in this manner, priests routinely gained the approval of parents; and often times the sexual abuses occurred during the night in their beds at the priests' residences. These seemingly routine practices of having altar boys stay overnight served the predatory priests with a steady supply of victims under the auspices and pretense of formal church protocol, which allowed the church to continually operate a veritable harem of young boys who were readily available to pedophiles who utilized the stature of the church into deceiving the community to regard them as high-level officials.

12. The systematic and ongoing pattern of sexual abuse of young children was characteristic of an internal society within Defendant Agana Archdiocese and whose norms were based on pedophilic conduct disguised by the rituals and pageantry of liturgical services, together with the aura of prestige that was inculcated in the community and which caused Catholic parishioners to place the highest level of confidence and trust in the church and its clergy. This internal society of sexual corruption sustained itself through a conspiratorial arrangement between priests and higher officials in the Agana Archdiocese whereby they all understood and agreed to remain quiet about each others sexual abuse misconduct, to tolerate such misconduct, and to withhold information about such misconduct from third parties including victims' parents or guardians and law enforcement authorities, in order to protect the offenders and the Agana Archdiocese, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

13. These sexually predatory norms were an integral part of the standards and culture generated by the central authority of the Roman Catholic Church based in Vatican City, Italy, which closely controlled the operations of the Agana Archdiocese, and which aided and abetted such sexually predatory and abusive practices by priests by knowingly tolerating such actions, failing to manage the Agana Archdiocese to prevent sexual misconduct, and engaging in actions to protect and shield priests through such policies as transfers to other jurisdictions, maintaining an internal code of silence, and choosing to remain willfully blind to the ongoing sexual misconduct committed by Catholic priests.

//

//

**B. Sexual Abuse Inflicted on Plaintiff Mark Mafnas Apuron**

14. In or about 1989 or 1990, around the age of fifteen (15) or sixteen (16) years old, Mark was sexually molested and abused by his uncle, Anthony Sablan Apuron ("Apuron"), while attending a religious event at the Archdiocese of Agana Chancery Office ("Chancery"), also known as Uncle Tony's house by Mark and his family. During this time, Apuron was the Archbishop of Agana and upon information and belief, Apuron resided at the Chancery.

15. Mark recalls having to go to the Chancery quite often for functions, although he didn't always know what type of function he was attending. During these functions, Mark routinely made alcohol beverages for his family members at their request and would sometimes sip from it.

16. On one particular occasion while attending a religious event, Mark snuck away from the crowd to go smoke a cigarette. Due to the fact that it was a church event and because it is considered disrespectful in Mark's culture to smoke in front of your parents and/or elders, Mark decided to sneak off and smoke in Apuron's bathroom. On his way to the bathroom, Mark brought an alcohol beverage with him.

17. Once in the bathroom, Mark began to smoke his cigarette and sip on his drink. He lost track of time as he became distracted with testing out the bottles of cologne displayed on Apuron's bathroom vanity. In the midst of smoking, drinking, and spraying cologne, Mark became startled when he noticed Apuron in the bathroom staring at him. Apuron seemed very upset. Mark froze in fear and was afraid that he was in trouble. All of a sudden, Apuron approached Mark violently pulled Mark's pants down, and pushed Mark onto the bathroom vanity. Mark thought that Apuron was going to spank him and expected to get a whipping on his butt. Instead, Mark felt something forecefully penetrate his butt, and for a moment, Mark did not know what was going on because it happened so fast. Eventually, the pain was so unbearable that it snapped Mark out of the state of mind he was in and he realized that Apuron's penis was in his butt. Mark shoved Apuron off of him and managed to get away. For the remainder of the religious function, Mark stayed with his parents until they were ready to leave.

18. After this incident, Mark made it a point to avoid Apuron. He refused to attend any gatherings, whether family, religious or social, where Apuron would be present. Mark's parents started questioning why Mark no longer attended these functions. Mark's distance put a strain on his relationship with his family and a wedge between Mark and his parents. Mark was ashamed and embarrassed to tell his family what Apuron

did to him, although he would give them hints and tell the family that he did not like Apuron. Mark's comments seemed to offend and upset the family and he felt like he was being ostracized. Eventually, Mark decided to disconnect from the family and do his own thing.

19. At all times relevant hereto, Apuron sexually abused and molested Mark when Mark was a minor and committed such acts while serving as a priest and/or as Archbishop of Guam, in his capacity as an agent and employee of the Agana Archdiocese, which is vicariously liable for his actions.

20. The Agana Archdiocese and DOES 1-50, inclusive, knew that Apuron had sexually abused and molested Mark, and rather than reporting the matter to law enforcement and without intervening so as to prevent Apuron from engaging in additional instances of sexual abuse, and without seeking to have Apuron acknowledge and take responsibility for his wrongful actions, they assisted Apuron with the specific purpose or design to keep Apuron's misconduct hidden and secret; to hinder or prevent Apuron's apprehension and prosecution; and to protect the Agana Archdiocese, as well as the Roman Catholic church as an international institution.

21. To this day, the Agana Archdiocese and DOES 1-50 never contacted Mark, Mark's family, or children they know Apuron had sexual contact with. The Agana Archdiocese and DOES 1-50 have been content that any other children that were sexually abused by Apuron, while he was serving as a priest and/or as Archbishop of Guam, remain affected by guilt, shame and emotional distress.

22. The criminal offense of Child Abuse is defined in 9 GCA § 31.30, which states in pertinent part as follows:

> (a) A person is guilty of child abuse when:
>    (1)   he subjects a child to cruel mistreatment; or
>    (2)   having a child in his care or custody or under his control, he:
>        \*    \*    \*
>        (B) subjects that child to cruel mistreatment; or
>        (C) unreasonably causes or permits the physical or, emotional
>            health of that child to be endangered

23. Under 19 GCA § 13101, the following relevant definitions are provided:

>    \*    \*    \*
> (b) Abused or neglected child means a child whose physical or mental health or
>     welfare is harmed or threatened with harm by the acts or omissions of the
>     person(s) responsible for the child's welfare;
>    \*    \*    \*
> (d) Child means a person under the age of 18 years;
>    \*    \*    \*

(t) Harm to a child's physical health or welfare occurs in a case where there exists evidence of injury, including but not limited to:

* * *

(2) Any case where the child has been the victim of a sexual offense as defined in the Criminal and Correctional Code; or
(3) Any case where there exists injury to the psychological capacity of a child such as failure to thrive, extreme mental distress, or gross emotional or verbal degradation as is evidenced by an observable and substantial impairment in the child's ability to function within a normal range of performance with due regard to the child's culture(.)

24. Under 9 GCA § 25A201, "sexual conduct" with a minor is defined as follows:

(o) Sexual Conduct means acts of sexual penetration, sexual contact, masturbation, bestiality, sexual penetration, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or pubic area of a minor.

25. Under 9 GCA § 25.10(8), "sexual contact" is defined as follows:

(8) Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

26. Under 9 GCA § 25.10(9), "sexual penetration" is defined as follows:

(9) Sexual Penetration means sexual intercourse, cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emissions see is not required.

27. Under 9 GCA § 25.15, the crime of First Degree Criminal Sexual Misconduct with regard to a child is set forth in pertinent part as follows:

a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual penetration with another person and if any of the following circumstances exists:
(1) that other person is under fourteen (14) years of age;
(2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

28. Under 9 GCA § 25.20, the crime of Second Degree Criminal Sexual Misconduct with regard to a child is set forth in pertinent part as follows:

(a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
(1) that other person is under fourteen (14) years of age;

> (2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

29. Under 19 GCA § 13201(b), the following are required to report child abuse:

> (b) Persons required to report suspected child abuse under Subsection (a) include, but are not limited to, ... clergy member of any religious faith, or other similar functionary or employee of any church, place of worship, or other religious organization whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, ...

## IV.
## FIRST CAUSE OF ACTION

**Child Sexual Abuse**
**[Against Defendant Apuron]**

30. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. Apuron committed the offense of First Degree Criminal Sexual Misconduct, as set forth in 9 GCA § 25.15, by engaging in sexual penetration with Mark when Mark was at least fourteen (14) but less than sixteen (16) years of age; and Apuron, in his position as a priest and/or as Archbishop of Guam, but more importantly as Mark's uncle was in a position of authority over Mark and Apuron used this authority to coerce Mark to submit.

32. Apuron committed the offense of Second Degree Criminal Sexual Misconduct, as set forth in 9 GCA § 25.20, by engaging in sexual contact with Mark when Mark was at least fourteen (14) but less than sixteen (16) years of age; and Apuron, in his position as a priest and/or as Archbishop of Guam, but more importantly as Mark's uncle was in a position of authority over Mark and Apuron used this authority to coerce Mark to submit.

33. Apuron also committed the offense of Child Abuse, as set forth in 9 GCA § 31.30 by subjecting Mark to cruel mistreatment; and, while having Mark, who was a child at the time pursuant to 19 GCA § 13101(d), under his care, custody or control, unreasonably caused or permitted the physical or emotional health of the child to be endangered.

//

34. As a direct and proximate consequence of Apuron's misconduct, Mark was an abused or neglected child within the meaning of 19 GCA § 13101(b) because his physical or mental health or welfare was and continues to be harmed by the acts or omissions of Apuron, who was responsible for the child's welfare. Moreover, as Apuron's misconduct constitutes the commission of one or more criminal offenses, Mark has suffered harm to a child's physical health or welfare within the meaning of 19 GCA § 13101(t)(2) because Mark was the victim of a sexual offense as defined in the Criminal and Correctional Code (9 GCA).

35. As a direct and proximate consequence of Apuron's misconduct, Mark has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

36. By engaging in the conduct described herein, Apuron acted with malice, oppression, and/or fraud, entitling Mark to exemplary and punitive damages.

## V.
## SECOND CAUSE OF ACTION

### Child Sexual Abuse
### [Against Defendants Agana Archdiocese and DOES 1 – 50]

37. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) are vicariously liable for the sexual abuse committed upon Mark by Apuron. Public policy dictates that Defendants should be held responsible for Apuron's wrongful conduct under the theory commonly referred to as *Respondeat Superior*.

39. For the reasons set forth in the incorporated paragraphs of this Complaint, the sexual abuse of Mark arose from and was incidental to Apuron's employment with the Agana Archdiocese, and Apuron was acting within the scope of his employment with the Agana Archdiocese at the time he committed the acts of sexual abuse, which were foreseeable to Defendants.

40. Defendants ratified and / or approved of Apuron's sexual abuse by failing to adequately investigate, discharge, discipline and / or supervise Apuron and other priests known by Defendants to have

sexually abused children, or to have been accused of sexually abusing children; by concealing evidence of Apuron's sexual abuse; failing to intervene to prevent ongoing and / or further sexual abuse; by failing to report the sexual abuse as required under 19 GCA 13201(b); by allowing Apuron to continue in service as a Catholic priest and/or as Archbishop of Guam working for the Agana Archdiocese; and by providing Apuron with assistance in fleeing Guam in or around June 2016 immediately after a defamation lawsuit was filed by plaintiffs who were victims of Apuron's past sexual abuse.

41. Defendants further ratified the sexually abusive conduct of Apuron by elevating him to the position of Archbishop, the highest position in the Catholic Archdiocese on Guam, and thereby presenting him as a figure of utmost integrity and stature to the community, notwithstanding Defendants' knowledge, ratification and approval of Apuron's sexually abusive conduct.

42. Despite the pretense of policies and procedures to investigate and address instances of child sexual abuse by priests, Defendants in fact implemented such policies and procedures for no other purpose than to avoid scandal, maintain secrecy and preserve loyalty to fellow clergy, including child molesting clergy, rather than the protection of children. Such hypocritical conduct by Defendants has served to systematically encourage, perpetuate and promote sexually abusive conduct by priests in the Agana Archdiocese.

43. Defendants either had actual knowledge of Apuron's sexual abuse of Mark, or could have and should have reasonably foreseen that Apuron would commit sexual abuse to Mark in the course of his employment as a priest and/or as Archbishop of Guam, as an agent and employee of the Agana Archdiocese.

44. As a direct and proximate result of the Defendants' above – described conduct, Mark has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

45. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Mark to exemplary and punitive damages.

//

//

# VI.
# THIRD CAUSE OF ACTION

### Negligence
### [Against All Defendants]

46. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. Defendants Apuron, Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to protect Mark when he was entrusted to Apuron's care by Mark's parents. Mark's care, welfare, and / or physical custody were temporarily entrusted to Defendants, and Defendants accepted the entrusted care of Mark. As such, Defendants owed Mark, as a child at the time, a special duty of care, in addition to a duty of ordinary care, and owed Mark the higher duty of care that adults dealing with children owe to protect them from harm.

48. By virtue of his unique authority and position as a Roman Catholic priest and/or as Archbishop of Guam, Apuron was able to identify vulnerable victims and their families upon which he could perform such sexual abuse; to manipulate his authority to procure compliance with his sexual demands from his victims; to induce the victims to continue to allow the abuse; and to coerce them not to report it to any other persons or authorities. As a priest and/or as Archbishop of Guam, Apuron had unique access to a position of authority within Roman Catholic families and such access, authority and reverence was known to the Defendants and encouraged by them.

49. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Apuron's sexually abusive and exploitative propensities and / or that Apuron was an unfit agent. It was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to Mark, the children entrusted to Defendants' care would be vulnerable to sexual abuse by Apuron.

50. Defendants breached their duty of care to the minor Mark by allowing Apuron to come into contact with Mark as a child without supervision; by failing to adequately supervise, or negligently retaining Apuron whom they permitted and enabled to have access to Mark; by failing to properly investigate; by failing to inform or concealing from Mark's parents, guardians, or law enforcement officials that Apuron was or may have been sexually abusing minors; by holding out Apuron to Mark's parents or guardians, and to the community of Guam at large, as being in good standing and trustworthy as a person of

stature and integrity. Defendants cloaked within the facade of normalcy Apuron's contact with Mark and / or with other minors who were victims of Apuron, and deliberately concealed and disguised the sexual abuse committed by Apuron.

51. As a direct and proximate result of the Defendants' above – described conduct, Mark has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

52. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Mark to exemplary and punitive damages.

## VII.
## FOURTH CAUSE OF ACTION

### Negligent Supervision
### [Against Defendants Agana Archdiocese and DOES 1 – 50]

53. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to provide reasonable supervision of both Apuron and minor child Mark; to use reasonable care in investigating Apuron; and to provide adequate warning to Mark's family, and to families of other children who were entrusted to Apuron, of Apuron's sexually abusive and exploitative propensities and unfitness.

55. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Apuron's sexually abusive and exploitative propensities and/or that Apuron was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise Apuron in his position of trust and authority as a Catholic priest and/or as Archbishop of Guam, where he was able to commit the wrongful acts against Mark alleged herein. Defendants failed to provide reasonable supervision of Apuron, failed to use reasonable care in investigating Apuron, and failed to provide adequate warning to Mark's family regarding Apuron's sexually abusive and exploitative propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

56. As a direct and proximate result of the Defendants' above – described conduct, Mark has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

57. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Mark to exemplary and punitive damages.

## VIII.
## FIFTH CAUSE OF ACTION

### Negligent Hiring And Retention
### [Against Defendants Agana Archdiocese and DOES 1 - 50]

58. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty not to hire and / or retain Apuron in light of his sexually abusive and exploitative propensities.

60. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Apuron's sexually abusive and exploitative propensities and / or that Apuron was an unfit agent. Despite such knowledge and / or an opportunity to learn of Apuron's misconduct, Defendants negligently hired and retained Apuron in the position of trust and authority as a Catholic priest and/or as Archbishop of Guam, where he was able to commit the wrongful acts against Mark alleged herein. Defendants failed to properly evaluate Apuron's application for employment by failing to conduct necessary screening; failed to properly evaluate Apuron's conduct and performance as an employee of Defendants; and failed to exercise the due diligence incumbent upon employers to investigate employee misconduct, or to take appropriate disciplinary action, including immediate termination and reporting and referral of Apuron's sexual abuse to appropriate authorities. Defendants negligently continued to retain Apuron in service as a Catholic priest and/or as Archbishop of Guam working for Defendants, which enabled him to continue engaging in the sexually abusive and predatory behavior described herein.

//

Case 1:18-cv-00003   Document 1   Filed 01/10/18   Page 13 of 16

13

61. As a direct and proximate result of the Defendants' above – described conduct, Mark has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

62. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Mark to exemplary and punitive damages.

## IX.
## SIXTH CAUSE OF ACTION

**Breach of Fiduciary Duty And / Or Confidential Relationship**
**[Against All Defendants]**

63. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. By holding Apuron out as a qualified priest and/or as Archbishop of Guam, and a person of stature and integrity within the Catholic Archdiocese, Defendants Agana Archdiocese and DOES 1 - 50, together with Apuron himself, invited, counseled, encouraged and induced the Catholic community of Guam, including parents or guardians of children, and particularly parents or guardians of children serving as altar boys and children eligible to serve as altar boys, to have trust and confidence in the Agana Archdiocese and its priests and to entrust their children to the company of priests and specifically to Apuron, including allowing their children to be alone with Apuron without supervision, and to spend nights at Apuron's residence. Through such actions, Defendants collectively created and entered into a fiduciary and / or confidential relationship with its parishioners, including Catholic parents or guardians and their children, and in particular, children who provided services to the Agana Archdiocese that included serving as altar boys. Accordingly, Defendants collectively created and entered into a fiduciary and / or confidential relationship specifically with the minor child Mark.

65. Through such fiduciary and / or confidential relationship, Defendants collectively caused parents or guardians to entrust their children to priests, and specifically to Apuron, including the parents of Mark, resulting in the subject acts of sexual abuse described herein.

//

66. Defendants collectively breached their fiduciary and / or confidential relationship with the minor child Mark by violating the trust and confidence placed in them by parishioners and specifically by the minor child Mark, and by engaging in the wrongful acts described in this Complaint.

67. As a direct and proximate result of the Defendants' above – described conduct, Mark has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

68. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Mark to exemplary and punitive damages.

## X.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Mark Mafnas Apuron requests judgment against all Defendants on all counts as follows:

1. For all general, special, exemplary and punitive damages, as allowed by law in a sum to be proven at trial and in an amount not less than $5,000,000;
2. For costs and fees incurred herein;
3. Attorneys' fees, as permitted by law; and
4. For other such and further relief as the Court may deem just and proper.

## XI.
## DEMAND FOR JURY TRIAL

Plaintiff Mark Mafnas Apuron, through his counsel, David J. Lujan, hereby demands a jury trial of six (6) in the above-entitled action, pursuant to Fed. R. Civ. Proc. 48(a).

Respectfully submitted this 9th day of January, 2018.

_____
DAVID J. LUJAN
*Attorney for Plaintiff,*
*Mark Mafnas Apuron*

## VERIFICATION

MARK MAFNAS APURON, declares and states that he is the PLAINTIFF in the foregoing COMPLAINT; that he has read said VERIFIED COMPLAINT FOR DAMAGES and knows the contents thereof to be true and correct, except as to the matters which may have been stated upon his information and belief; and as to those matters, he believes them to be true.

I declare, under penalty of perjury, this 9th day of January, 2018, that the foregoing is true and correct to the best of my knowledge.

_____
MARK MAFNAS APURON